## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ROSENFELD FAMILY FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>COOPER TIRE & RUBBER COMPANY, JOHN J, HOLLAND, BRADLEY E. HUGHES, STEVEN M. CHAPMAN, SUSAN F. DAVIS, KATHRYN P. DICKSON, TYRONE M. JORDAN, TRACEY I. JOUBERT, GARY S. MICHEL, BRIAN C. WALKER, and ROBERT D. WELDING,<br><br>Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Rosenfeld Family Foundation ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Cooper Tire & Rubber Company ("Cooper" or the "Company") and the members of Cooper's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Cooper will be acquired by The Goodyear Tire & Rubber

Company ("Goodyear") through Goodyear's wholly owned subsidiary Vulcan Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.   On February 22, 2021, Cooper and Goodyear issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated February 22, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Cooper shareholders will receive (i) $41.75 in cash, and (ii) 0.907 shares of Goodyear common stock for each Cooper share they own (the "Merger Consideration"). Upon closing of the Proposed Transaction, Goodyear shareholders will own approximately 84% of the combined company, and Cooper shareholders will own approximately 16%. The Proposed Transaction is valued at approximately $2.5 billion.

3.   On April 2, 2021, Cooper filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Cooper stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for Cooper, Goodyear and the pro forma company, and the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"); (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Cooper stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.   In short, unless remedied, Cooper's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cooper.

9. Defendant Cooper is a Delaware corporation, with its principal executive offices located at 701 Lima Avenue, Findlay, Ohio 45840. Cooper is the parent company of a global family of companies that specializes in the design, manufacture, marketing and sale of passenger car, light truck, medium truck, motorcycle and racing tires. Cooper's shares trade on the New York Stock Exchange under the ticker symbol "CTB."

10. Defendant John J. Holland ("Holland") has been non-executive Chairman of the Board since May 8, 2020 and a director of the Company since 2003.

11. Defendant Bradley E. Hughes ("Hughes") has served as President and Chief Executive Officer ("CEO") of the Company since September 2016 and has been a director since 2016. Defendant Hughes previously served as the Company's Senior Vice President ("SVP") and Chief Operating Officer ("COO") from January 2015 to September 2016, SVP and President-International Tire Operations from July 2014 to January 2015, SVP and Chief Financial Officer ("CFO") from July 2014 to December 2014, and Vice President and CFO from November 2009 to July 2014.

12. Defendant Steven M. Chapman ("Chapman") has been a director of the Company since 2006.

13. Defendant Susan F. Davis ("Davis") has been a director of the Company since 2016.

14. Defendant Kathryn P. Dickson ("Dickson") has been a director of the Company since 2018.

15. Defendant Tyrone M. Jordan ("Jordan") has been a director of the Company since 2021.

16. Defendant Tracey I. Joubert ("Joubert") has been a director of the Company since 2017.

17. Defendant Gary S. Michel ("Michel") has been a director of the Company since 2015.

18. Defendant Brian C. Walker ("Walker") has been a director of the Company since 2018.

19. Defendant Robert D. Welding ("Welding") has been a director of the Company since 2007.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Goodyear is an Ohio corporation, with its principal executive offices located at 200 Innovation Way, Akron, Ohio 44316. It is one of the world's leading manufacturers of tires, engaging in operations in most regions of the world. Goodyear develops, manufactures, markets and distributes tires for most applications. Goodyear also manufactures and markets rubber-related chemicals for various applications. Goodyear is one of the world's largest operators of commercial truck service and tire retreading centers. Goodyear's shares trade on the Nasdaq Global Select Market under the ticker symbol "GT."

22. Merger Sub is a Delaware corporation and a direct, wholly-owned subsidiary of Goodyear.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. Cooper is a leading manufacturer and marketer of replacement tires. It is the fifth largest tire manufacturer in North America and, according to a recognized trade source, the Cooper Tire family of companies is the thirteenth largest tire company in the world based on sales. The Company specializes in the design, manufacture, marketing and sales of passenger car, light truck, truck and bus radial, motorcycle and racing tires. Based in Findlay, Ohio, Cooper and its family of companies currently operate in 15 countries, including 10 manufacturing facilities and 19 distribution centers. Its portfolio of brands includes Cooper, Mastercraft, Roadmaster and Mickey Thompson. The Company is organized into four business segments: North America, Latin America, Europe and Asia.

24. On February 22, 2021, the Company announced its full year 2020 financial results, reporting operating profit of $231 million, or 9.2 percent of net sales, compared to $174 million, or 6.3 percent of net sales, for 2019. Reflecting on the Company's results, defendant Hughes commented:

> In 2020, Cooper continued to build upon the positive momentum that began in 2019, driven by execution of our strategic initiatives, which have successfully transformed Cooper into a consumer-driven company. Despite impacts from coronavirus, we delivered strong operating profit performance for the year and demonstrated that the value proposition of providing high quality tires at an affordable price is compelling for consumers, especially in the current environment. We are proud of the achievements of our teams around the globe.

**The Proposed Transaction**

25. On February 22, 2021, Cooper and Goodyear issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> The Goodyear Tire & Rubber Company (Nasdaq: GT) and Cooper Tire & Rubber Company (NYSE: CTB) today announced that they have entered a definitive transaction agreement under which Goodyear will acquire Cooper in a transaction with a total enterprise value of approximately $2.5 billion. The transaction will expand Goodyear's product offering by combining two portfolios of complementary brands. It will also create a stronger U.S.-based manufacturer with increased presence in distribution and retail channels while combining both companies' strengths in the highly profitable light truck and SUV product segments. The combined company will have approximately $17.5 billion in pro forma 2019 sales.
>
> Under the terms of the transaction, which has been approved by the Boards of Directors of both companies, Cooper shareholders will receive $41.75 per share in cash and a fixed exchange ratio of 0.907 shares of Goodyear common stock per Cooper share for a total equity value of approximately $2.8 billion. Based on Goodyear's closing stock price on February 19, 2021, the last trading day prior to the announcement, the implied cash and stock consideration to be received by Cooper shareholders is $54.36 per share, representing a premium of 24% to Cooper's closing stock price on February 19, 2021, and a premium of 36% to Cooper's 30-day volume weighted average price as of the close on February 19, 2021. Upon closing of the transaction, Goodyear shareholders will own approximately 84% of the combined company, and Cooper shareholders will own approximately 16%.

Founded in 1914, Cooper is the 5th-largest tire manufacturer in North America by revenue with approximately 10,000 employees working in 15 countries worldwide. Cooper products are manufactured in 10 facilities around the globe, including wholly-owned and joint venture plants. The company's portfolio of brands includes Cooper, Mastercraft, Roadmaster and Mickey Thompson.

"This is an exciting and transformational day for our companies," said Richard J. Kramer, Goodyear chairman, chief executive officer and president. "The addition of Cooper's complementary tire product portfolio and highly capable manufacturing assets, coupled with Goodyear's technology and industry leading distribution, provides the combined company with opportunities for improved cost efficiency and a broader offering for both companies' retailer networks. We are confident this combination will enable us to provide enhanced service for our customers and consumers while delivering value for shareholders."

Kramer added, "We have a great deal of respect for Cooper's team and share a commitment to integrity, quality, agility and teamwork. We look forward to welcoming Cooper to the Goodyear family."

Brad Hughes, Cooper president & chief executive officer, added, "Cooper has transformed into a dynamic, consumer-driven organization that has balanced traditional and emerging channels to increase demand for our products, while updating and effectively leveraging our global manufacturing footprint. I am extremely proud of what our team has accomplished over the past 107 years and am grateful to our talented employees for their contributions and commitment. This transaction marks the start of a new chapter for Cooper, which we are entering from a position of strength. We believe that it represents an attractive opportunity to maximize value for our shareholders, who will receive a meaningful premium as well as the opportunity to participate in the upside of the combined company. We look forward to the opportunity to combine Cooper's considerable talents with Goodyear's, and to be part of a bigger, stronger organization that will be competitively well-positioned to win in the global tire industry."

**Compelling Strategic and Financial Benefits**

- Strengthens Leadership Position in Global Tire Industry. The transaction further strengthens Goodyear's leading position in the U.S., while significantly growing its position in other North American markets. In China, the combination nearly doubles Goodyear's presence and increases the number of relationships with local automakers, while creating broader distribution for Cooper replacement tires through Goodyear's network of 2,500 branded retail stores.

- Combines Two Complementary Brand Portfolios with a Comprehensive Offering Across the Value Spectrum. The combined company will have the opportunity to leverage the strength of Goodyear original equipment and

premium replacement tires, along with the mid-tier power of the Cooper brand, which has particular strength in the light truck and SUV segments. Together, these brands have the opportunity to deliver a more complete offering to aligned distributors and retailers.

- Provides Significant, Immediate and Long-Term Financial Benefits.
  - Synergies and Tax Benefits. Goodyear expects to achieve approximately $165 million in run-rate cost synergies within two years following the close of the transaction. The majority of the cost synergies will be related to overlapping corporate functions and realizing operating efficiencies. In addition, the combination is expected to generate net present value of $450 million or more by utilizing Goodyear's available U.S. tax attributes. These tax attributes will reduce the company's cash tax payments, positioning it to generate additional free cash flow. The expected cost synergies from this transaction do not include manufacturing-related savings.

  - Earnings and Balance Sheet. The transaction is immediately accretive to earnings per share, modestly improves Goodyear's balance sheet position and enhances the company's ability to de-lever.
- Opportunity to Create Additional Value from Manufacturing and Distribution. Opportunities for expansion of select Cooper facilities will increase capital efficiency and flexibility. Additional revenue growth opportunities will result from the addition of the Cooper brand to Goodyear's global distribution network.
- Increases Scale to Support Investments in New Mobility and Fleet Solutions. As an industry leader in the U.S., the combined company will offer tire products and a broad selection of services through Goodyear's relationships with traditional and emerging original equipment manufacturers; autonomous driving system developers; new and established fleet operators; and other mobility platforms.

**Timing, Approvals and Financing**

The transaction is subject to the satisfaction of customary closing conditions, including receipt of required regulatory approvals and the approval of Cooper shareholders. The transaction is expected to close in the second half of 2021.

Goodyear intends to fund the cash portion of the transaction through debt financing and has secured a committed bridge financing facility led by JPMorgan Chase Bank, N.A.

**Focused on a Successful Integration**

With complementary business models, organizational structures and distribution channels, Goodyear and Cooper expect to execute a successful integration that captures the full benefits of the combination. The companies will prepare for integration focused on continuity of manufacturing, operations and customer service.

After closing, the combined company will be headquartered in Akron, Ohio, but Goodyear expects to maintain a presence in Findlay, Ohio.

**Insiders' Interests in the Proposed Transaction**

26. Cooper insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Cooper.

27. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Goodyear. Upon consummation of the Proposed Transaction, all vested and unvested Company options, restricted stock units, performance cash units, and notional shares will be converted into the right to receive cash payments, as set forth in the following tables:

| Name | Number of Shares Subject to Outstanding Vested Cooper Tire Stock Options(1) | Value $(2) |
|---|---|---|
| Bradley E. Hughes | 59,235 | $1,920,290 |

| Name | Number of Shares Subject to Outstanding Cooper Tire Restricted Stock Unit Awards | Value $ |
|---|---|---|
| Bradley E. Hughes | 79,812 | $4,552,476 |
| Gerald C. Bialek | 7,951 | $ 453,525 |
| Paula S. Whitesell | 16,364 | $ 933,403 |
| Stephen Zamansky | 20,303 | $1,158,083 |

| Name | Aggregate Performance Cash Unit Award Value $(1) |
|---|---|
| Bradley E. Hughes | $ 2,168,416 |
| Gerald C. Bialek | $ 76,620 |
| Paula S. Whitesell | $ 77,471 |
| Stephen Zamansky | $ 430,104 |

| Name | Aggregate Number of Notional Shares | Value $ |
|---|---|---|
| Thomas P. Capo | — | — |
| Stephen M. Chapman | 142,209 | $8,111,601 |
| Susan F. Davis | 22,674 | $1,293,325 |
| Kathryn P. Dickson | 9,921 | $ 565,894 |
| John J. Holland | 131,189 | $7,483,021 |
| Tyrone M. Jordan | — | — |
| Tracey I. Joubert | 15,262 | $ 870,544 |
| Gary S. Michel | 22,674 | $1,293,325 |
| Brian C. Walker | 13,467 | $ 768,158 |
| Robert D. Welding | 88,877 | $5,069,544 |

28. Further, the Company's executive officers participate in one of Cooper's annual incentive compensation plans ("AIP"), which provide for annual incentive compensation upon the achievement of specified performance objectives. Under Cooper's severance pay plan, the Company's executive officers are entitled to receive a payment with respect to the AIP for the year in which the merger occurs, as set forth in the following table:

| Name | Prorated Target 2021 AIP |
|---|---|
| Bradley E. Hughes | $ 818,877 |
| Gerald C. Bialek | $ 79,890 |
| Paula S. Whitesell | $ 162,263 |
| Stephen Zamansky | $ 237,358 |

29. In addition, if they are terminated in connection with the Proposed Transaction, Cooper insiders stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash(1) | Equity(2) | Perquisites/ Benefits(3) | Total |
|---|---|---|---|---|
| Bradley E. Hughes | $ 9,752,293 | $ 8,453,784 | $ 203,298 | $ 18,409,375 |
| Gerald C. Bialek | $ 576,510 | $ 592,303 | $ 59,806 | $ 1,228,619 |
| Paula S. Whitesell | $ 1,548,709 | $ 1,058,035 | $ 72,602 | $ 2,679,346 |
| Stephen Zamansky | $ 2,413,169 | $ 1,932,629 | $ 107,749 | $ 4,453,547 |

### The Proxy Statement Contains Material Misstatements or Omissions

30. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Cooper's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for Cooper, Goodyear and the pro forma company, and the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Goldman; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders.

*Material Omissions Concerning the Financial Projections for Cooper, Goodyear and the Pro Forma Company and Goldman's Financial Analyses*

32. The Proxy Statement omits material information regarding the financial projections for the Company, Goodyear and the pro forma combined company.

33. For example, the Proxy Statement sets forth that in connection with rendering its fairness opinion Goldman reviewed, among other things:

- certain internal financial analyses and forecasts for Goodyear standalone prepared by its management (the "Goodyear projections"); [and]

\* \* \*

- certain analyses and forecasts for Goodyear pro forma for the transaction comprised of the Goodyear projections, the internal financial analyses and forecasts for Cooper Tire prepared by Cooper Tire's senior management and the synergies, each as approved for Goldman Sachs' use by Cooper Tire (the "pro forma forecasts").

Proxy Statement at 61. The Proxy Statement, however, fails to disclose the financial analyses and

- 11 -

forecasts for Goodyear prepared by its management, as well as the pro forma forecasts, including the analyses and forecasts for Goodyear pro forma for the transaction.

34.     Further, with respect to Cooper's financial projections, the Proxy Statement fails to disclose all line items underlying the calculation of EBITDA and unlevered free cash flow for the projection period.

35.     Additionally, the Proxy Statement describe Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cooper's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36.     With respect to Goldman's *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed.

37.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose quantification of: (i) the NTM EBITDA estimates used in the analysis; (ii) the assumed amount of net cash and minority interest as of the relevant year-end; (iii) the projected year-end fully diluted shares of Cooper common stock; (iv) the dividends per share expected to be paid over the applicable period; and (v) the inputs and assumptions underlying the discount rate of 10.0%.

38.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal year estimate of the EBITDA to be generated by the Company; (ii) quantification of the Company's terminal value; (iii) quantification of the inputs

and assumptions underlying the discount rates ranging from 9.25% to 10.25%; (iv) the estimated net cash of Cooper as of December 31, 2020; and (v) the number of fully diluted outstanding shares of Cooper.

39. With respect to Goldman's *Premia Analysis*, the Proxy Statement fails to disclose the transactions observed and the individual premiums for each of the transactions.

40. The omission of this information renders the statements in the "Cooper Tire Unaudited Prospective Financial Information" and "Opinion of Cooper Tire's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

42. For example, the Proxy Statement sets forth that the Company entered into confidentiality agreements with potential bidders referred to in the Proxy Statement as "Party B," "Party C" and "Party D." The Proxy Statement, however, fails to disclose whether the confidentiality agreements include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any potential counterparty from submitting a topping bid for Cooper.

43. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Cooper. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask

for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

44. Any reasonable Cooper stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

45. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

46. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

47. For example, in the February 22, 2021 press release announcing the Proposed Transaction, Richard J. Kramer, Goodyear's Chairman, CEO and President, states, "[w]e have a great deal of respect for Cooper's team and share a commitment to integrity, quality, agility and teamwork. We look forward to welcoming Cooper to the Goodyear family." Yet, the Proxy Statement fails to disclose whether any of Cooper's executive officers or directors are continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Goodyear and Cooper's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Goodyear's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

48. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Cooper's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

49. The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers of Cooper Tire in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the deadline to exercise appraisal rights in connection with the Proposed Transaction, Plaintiff and the other Cooper stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections for Cooper, Goodyear and the pro forma company, the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Goldman, the background of the Proposed Transaction, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

55. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

57. Plaintiff repeats all previous allegations as if set forth in full.

58. The Individual Defendants acted as controlling persons of Cooper within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cooper, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

61. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cooper stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Cooper, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cooper stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 5, 2021                                    **LONG LAW, LLC**

                                                        By  */s/ Brian D. Long*
                                                            Brian D. Long (#4347)
                                                            3828 Kennett Pike, Suite 208
                                                            Wilmington, DE 19807
                                                            Telephone: (302) 729-9100
                                                            Email: BDLong@longlawde.com

**OF COUNSEL**                                          *Attorneys for Plaintiff*

**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com